The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Right. Good morning, Attorney Jacobs. If you are now ready, please proceed. If I may, Judge, just before that, I just want to call the case and put us on the record. Okay. I'm sorry. Okay. Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is United States v. Laura Martinez, Appeal No. 191667, Attorney Jacobs. Proceed, Mr. Jacobs. Thank you, Your Honor. May it please the Court, I'm Ralph Jacobs. I represent Laura Martinez, the appellant in this matter. With the Court's permission, I would like to reserve two minutes of my time for rebuttal. Yes, certainly. Proceed. Thank you. The issue in this case is whether Ms. Martinez satisfied the safety valve requirements of 18 U.S.C. Section 3553F, in particular, F5, by disclosing all of her information about the offense in this case. This was a drug case. Let me briefly outline the context in which this case and her debriefing sessions arose, and I would note that this information was all information that she did disclose to the prosecution in these debriefings. Ms. Martinez, at the time of the offense, which was February 2017, was a 23-year-old woman who drove from Providence, Rhode Island, to New York City for her former boyfriend, a 41-year-old drug dealer. Counsel, excuse me. I think, counsel, excuse me. Counsel, excuse me. You should assume that we know these facts. Let me ask you what I think is a, what I understand to be a critical difference between you and the prosecution. This goes to the question of what is the relevant timeframe for the disclosures that should have been made during these debriefing sessions. You seem to take a very narrow view of the relevant timeframe. The government seems to take a much more expansive view. So, how do you define the relevant timeframe for these disclosures? Your Honor is asking about the period of time covered by the information that she should have disclosed. In other words, I say she should have talked about the February 2017 trip to New York. And only, excuse me, and only that? That is the offense conduct. We contend that's the offense conduct. I know that the prosecution has raised this issue, that there was a conspiracy count, but looking at the case, this doesn't cover some broader conspiracy with other people that extends over a broader period of time. This concerns one trip to New York for five kilograms of cocaine. It was a very broad range of things, including information that she had on her cell phone about, for example, publicly available press releases or charges against other individuals that she may have gotten from the internet. She responded to those questions. The government thinks that maybe some of her responses were not credible, but those are extraneous matters to the charges against her, in our view. This was a one trip conspiracy, and there's no suggestion that it was more than this. If I may, I think this points out the government's approach to this, which is not to focus on facts and information, but instead of that, to rest on assumptions and suspicions. So, for example, there is an assumption that the government argued quite explicitly in the court below that no novice would have been invited to participate in this size transaction, because drug dealers just don't do that. That was argued to the court below. Matt Counsel, if I may interrupt, what are the issues of law that you see distinguished from your disagreement about the facts about whether she fully disclosed or not? The legal issues, in addition to the chronological scope, have to do with the nature of how the court goes about evaluating the completeness and truthfulness of the proffer. I contend that the underlying facts are not substantially in dispute. The question is, can the court simply adopt this idea that she hasn't adequately explained why she might have a press release or a copy of an indictment on her cell phone? Is that something that's germane to evaluating? Is the question of the hide germane in your view? Questions about... Just answer that one directly. Is the question of the hide germane in your view? Some of them certainly are. I acknowledge that. Okay. I guess the one way to read the record is that they thought she was not being truthful about her knowledge of the hide. The other information that you're referencing that might go to things that aren't directly related to this conspiracy would all be confirmatory of the conclusion that she was not being truthful about the hide. That's my difficulty. If the discharge defense and she was not truthful about her knowledge of it, that would be a real problem. What's your answer to that? What I would say is that from the beginning, she acknowledged that she knew that the drugs were video of the hide that apparently was taken months earlier is confusing. I understand it raised the lower court's skepticism, but in terms of the... It's an argument that even if she lied about her knowledge of the hide, it wasn't a material lie, and therefore it can't deprive her of the safety valve, or is there some other argument you're I would say it's not material. I would say that... I disagreed with on that. Is there any other argument you have about why her comments about the hide wouldn't suffice to support the finding that she was lying and therefore can't get the safety valve? What I would say is that a single statement that the lower court finds to be inaccurate is not disqualifying, and I would point to Matos as an example of that, where the court says that there are communications that occurred that Matos denied, for example, post-conspiracy communications or the fact that a particular co-conspirator had introduced him to the leader of the conspiracy or failing to reveal a particular conversation. What the court said is that those findings of falsehoods, my word, even collectively did not weigh heavily, and that it was only the addition of other more stark falsehoods that I think really convinced the court that there was an adequate basis to deny safety valve treatment. So if a denial in Matos is not sufficient to deny safety valve treatment, I would say that an explanation for the video of the hide in and of itself shouldn't deny safety valve treatment when the essence of it is that she knew it was hidden. She knew there was a hiding place, and she disclosed that freely from the beginning. Okay, thank you. Thank you, Your Honor. At this time, Attorney Jacobs, if you would mute your video, and Attorney Sourier, if you would unmute. Good morning, and may it please the court, may I proceed? You may. Thank you. I'd like to address the question of the scope of the conduct that's implicated by the safety valve in this case. Even if one defines the conspiracy to possess and with intent to distribute 5 kilograms of heroin conservatively, it's fairly clear that the defendant did not fully disclose under the safety valve statute. She didn't disclose, for example, that she knew who was supplying the drugs. She didn't. That's clear from the text exchanges that occurred the weekend before she went to New York. She didn't disclose that she knew all along there were going to be 5 kilograms. She insisted until after it was too late to change her story, that she only thought it was going to be 1 kilogram. She didn't disclose what happened at Walgreens, where the transfer was going to take place. Certainly, the supplier, the transfer, and how the contraband was going to be secreted in her car were all relevant to the charges in the information, all the things she pled guilty to. Once she starts asking, well, what's the full story here, then it starts implicating how deep was her knowledge. While we don't know the depth of her knowledge, so it's hard to say where to if she knew that the 5 kilograms was going to be secreted in a hide, then the question is, well, how long did she know about the hide? Was she just simply a mule on one day, or was this a conspiracy that she was much more up to her neck in? But certainly, for purposes of the safety valve, I think it's indisputable she didn't disclose fully as the government's expectation. I mean, it's clear that the government was very skeptical of her insistence that this was basically a one-time deal for her. Yes, she knew about the compartment, she knew about the drugs, but it seemed to be the government's view that her involvement went far beyond this single transaction, and you were expecting her as part of this debriefing process to reveal more extensive drug activities. Is that correct? Was that your expectation that should she fail to meet that expectation, she would not be complying with the requirements for the safety valve? Well, I think the case law says that she either has to fully reveal what she knows or explain rationally what she doesn't know. What she knows about what, counsel? Well, for example, she knew who the supplier was, and it was our expectation that if in fact she was more knowledgeable than she let on, that she would either explain how much she knew about the supplier, or she'd say, all I knew was he was a guy with the nickname Palooka, and that was it. But she didn't even reveal that much. So, yes, we had suspicions, and certainly, but she didn't even assuage our concerns given those suspicions. The question, at least as I understand implicit in Judge Lopez's question to you on this point, is what is the purpose of the required disclosure vis-a-vis the safety valve? So, one possibility would, before you answer, one possibility would be that the worry is that they are frustrating your ability to make the case against them on the charge that's brought. Well, that's not particularly true here, given how much she did concede about her culpability, and that would be also true in mottos. Another possibility is that even when the defendant gives you plenty to convict them on, so there's no way that their evasiveness is impeding your ability to charge them and convict them of the crime they're charged with. Nonetheless, their failure to cooperate or to be straightforward about what they did can still deprive them of the safety valve. It seems to me you must be making the second contention here, and I guess I'm just trying to figure out what that logic is and how we would figure out when a defendant who has admitted to all the elements of the charge defense but withholds some details about it nonetheless can be deprived of the safety valve, given that not every withholding suffices to do it. That's what mottos suggest. So, how do we draw that line? I would suggest that peripheral details may not violate the safety valve disclosure requirement, but that's not the case here, and how you draw the line is whether the defendant fulfills the requirement of being forthcoming. Even as we go to the elements of the crime, the case law says that the defendant needs to disclose more than the bare elements of the crime. She needs to disclose those interstitial details that make up the course of relevant conduct. How would you distinguish the mottos treatment of the failure to disclose the fact about how they were introduced to one of the co-conspirators? Why is that different than the failure to disclose this type of information? Well, I would argue a conspiracy begins at the time when the agreement is formed. Introduction to the conspirator, I think, predates that time, but certainly once the conspiracy has begun, all the acts that are taken in furtherance of its objective are relevant to the charges, and that's what happened here. She didn't even disclose fully what happened during the course of the actual conspiracy. Congress said in 3553F5, it's full disclosure of the elements of the offense and the relevant course of conduct. The more narrowly the courts define that, the harder it is for the Congress's intent to be satisfied, and defendants are getting away with admitting exactly what they already pledged. She already pled guilty at the time of the safety valve disclosure, so it's not a question of can we make out a case against her. We've already done that. It's a question of how she complied to get the benefit of being relieved of five-year minimum mandatory. I get it. Given that she's already pled, and given that if you're focusing on details that go to the charged crime, what exactly, in your view, is the reason to require the full disclosure of all these details? What's the practical reason to make that requirement of the defendant? Well, I think there's probably two practical reasons. One is so that the government has some sense that it's fair to give her the benefit of a statute, and the other is that in certain cases, that information can be useful to the government in investigating related matters. For example, here, let's say that she had revealed how the hide was installed, and who installed it. Well, we can't prosecute her for that, but that gives our investigators information to maybe thwart future installations. Maybe we go and stake out the Walgreens to see if there are other deals taking place there. Maybe we try to chase down Palooka and see where he's getting his information. I think milking the lower-level defendants for and prevent crime at the higher level, which is, I think, the point, or at least one of the points, of the safety valve statute. My only last question just on that is just that rationale makes sense. It's a little hard to see, then, how come the failure to disclose the introduction of the co-conspirator and mottos wouldn't also be a pretty material thing to have not disclosed, yet we concluded it wasn't? Because you would think that would help you with future investigations pretty easily, too, right? I think there is a line that's drawn between when the crime can be deemed to begin. Once, you know, failure to introduce somebody to the co-conspirator, well, you still find out who the co-conspirators are later in the disclosure. So, ultimately, that information doesn't make a difference. Here, the fact that she never revealed until it was too late who supplied the five kilograms of heroin, that does make a difference. So, you're welcome. If the court has no further questions, we would ask that you affirm the conviction and deny the appeal. Thank you. I have none. Judge Lopez, do you have any? No. No. Thank you. Attorney Zurier, you can mute your audio and video device at this time. And, Attorney Jacobs, if you could unmute your video. Thank you. You may proceed. Please. If I can address this issue of the purpose for disclosure and how one non-disclosure or skepticism about disclosure ought to disqualify, I think this issue of how one evaluates if the defendant is deserving of the benefit of the safety valve is something that the court can take into account. And here, I think if we look at the motivation to try and deflect blame or… Counsel, with respect, the district court made a specific finding that your client was manipulative. She kept changing her story when she thought it was to her advantage to do so. I don't know how you can plausibly present an argument as to her motivation in the face of that finding. What I would say is that the context of this for her, she's under tremendous pressure. She is pregnant at the time. She explained in the portion of the sealed appendix… She had additional opportunities during which she could explain the details of the crime, and she consistently failed to do that. And as the court found, she was trying to manipulate everyone, not just the government, her own lawyer, and the court. And those are factual findings by the district court, having gone through many hearings, several hearings with her, and observing her demeanor. I don't know that the court may have, in the course of many of the comments about her testimony, the court did think that some of her explanations didn't make sense, but also that there was no logic in why she would be saying what she was saying. So whether he used the word manipulative or not at one point, I don't know that he made a finding of manipulation with respect to the basis for… I would just say that I don't know that he found her being manipulative as a fact that led to denial of the safety valve. That's what I would say. Thank you. Okay, thank you very much. That concludes argument in this case. Attorney Jacobs and Attorney Zurier, you should disconnect from the hearing at this time.